| Fill in this information to identify the case: |
| --- |
| United States Bankruptcy Court for the: |
| District of Delaware |
| Case number *(if known)*: _____ Chapter 15 |

☐ Check if this is an amended filing

## Official Form 401

# Chapter 15 Petition for Recognition of a Foreign Proceeding   12/15

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write debtor's name and case number (if known).

**1. Debtor's name**

Teal Jones Lumber, LLC

**2. Debtor's unique identifier**

**For non-individual debtors:**

☑ Federal Employer Identification Number (EIN)   7  3 – 1  4  1  8  3  8  7

☐ Other _____ . Describe identifier _____ .

**For individual debtors:**

☐ Social Security number:   xxx – xx– ____ ____ ____ ____

☐ Individual Taxpayer Identification number (ITIN):  **9** xx – xx – ____ ____ ____ ____

☐ Other _____ . Describe identifier _____ .

**3. Name of foreign representative(s)**

Teal Jones Holdings Ltd.

**4. Foreign proceeding in which appointment of the foreign representative(s) occurred**

Supreme Court of British Columbia

**5. Nature of the foreign proceeding**

*Check one:*

☐ Foreign main proceeding
☐ Foreign nonmain proceeding
☑ Foreign main proceeding, or in the alternative foreign nonmain proceeding

**6. Evidence of the foreign proceeding**

☑ A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached.

☐ A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.

☐ Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached.

_____
_____

**7. Is this the only foreign proceeding with respect to the debtor known to the foreign representative(s)?**

☐ No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending.)
☑ Yes

| Debtor | Teal Jones Lumber, LLC | Case number (if known) |
|---|---|---|
| | Name | |

---

**8. Others entitled to notice**

Attach a list containing the names and addresses of:

(i)    all persons or bodies authorized to administer foreign proceedings of the debtor,

(ii)   all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and

(iii)  all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

---

**9. Addresses**

**Country where the debtor has the center of its main interests:**

Canada

**Debtor's registered office:**

421 NW 13th St, Suite 210
Number        Street

_____
P.O. Box

Oklahoma City OK                    73103
City        State/Province/Region    ZIP/Postal Code

United States
Country

**Individual debtor's habitual residence:**

_____
Number        Street

_____
P.O. Box

_____
City        State/Province/Region    ZIP/Postal Code

_____
Country

**Address of foreign representative(s):**

1133 Melville St., Suite 2700
Number        Street

_____
P.O. Box

Vancouver   BC            V6    E4E5
City        State/Province/Region    ZIP/Postal Code

Canada
Country

---

**10. Debtor's website (URL)**

tealjones.com

---

**11. Type of debtor**

*Check one:*

☑ Non-individual (*check one*):

    ❑ Corporation.  Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1.

    ❑ Partnership

    ☑ Other.  Specify:  Limited Liability Company

❑ Individual

---

Debtor    Teal Jones Lumber, LLC
          _____
          Name

Case number (if known)_____

---

**12. Why is venue proper in *this district*?**

Check one:

❑  Debtor's principal place of business or principal assets in the United States are in this district.

❑  Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district:

_____.

☑  If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because:

Debtor has retainer and is part of group with registered entities in this District.

---

**13. Signature of foreign representative(s)**

I request relief in accordance with chapter 15 of title 11, United States Code.

I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct,

✗ /s/ Gerrie Kotze                              Gerrie Kotze
  _____              _____
  Signature of foreign representative           Printed name

Executed on   04/26/2024
              _____
              MM  / DD / YYYY

✗ _____              _____
  Signature of foreign representative           Printed name

Executed on   _____
              MM / DD / YYYY

---

**14. Signature of attorney**

✗ /s/ R. Craig Martin                           Date   04/26/2024
  _____                      _____
  Signature of Attorney for foreign representative      MM   / DD / YYYY

  R. Craig Martin
  _____
  Printed name

  DLA Piper, LLP (US)
  _____
  Firm name

  1201 North Market Street, Suite 2100
  _____
  Number        Street

  Wilmington                                    DE          19801
  _____       _____    _____
  City                                          State       ZIP Code

  (302) 468-5700                                craig.martin@us.dlapiper.com
  _____               _____
  Contact phone                                 Email address

  5032                                          DE
  _____               _____
  Bar number                                    State

---

## Exhibit A

**Certified Initial Order**

SUPREME COURT
OF BRITISH COLUMBIA
VANCOUVER REGISTRY

APR 2 5 2024

ENTERED

SUPREME COURT
OF BRITISH COLUMBIA

S E A L

VANCOUVER
REGISTRY

No. S-242700
Vancouver Registry

IN THE SUPREME COURT OF BRITISH COLUMBIA

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT,

R.S.C., 1985 c. C-36, AS AMENDED

AND

IN THE MATTER OF A PLAN OF COMPROMISE AND ARRANGEMENT OF TEAL-JONES

GROUP AND THOSE OTHER PARTIES LISTED IN SCHEDULE "A"

PETITIONERS

**ORDER MADE AFTER APPLICATION**

|  |  |  |  |  |
|---|---|---|---|---|
| BEFORE | ) ) ) ) ) | THE HONOURABLE JUSTICE G.C. WEATHERILL | ) ) ) ) ) | APRIL 25, 2024 |

ON THE APPLICATION of the Petitioners coming on for hearing at 800 Smithe Street, Vancouver, BC  V6Z 2E1 on April 25, 2024 and on hearing Colin D. Brousson and Jeffrey D. Bradshaw, counsel for the Petitioners and those other counsel listed on Schedule "B" hereto; AND UPON READING the material filed, including the First Affidavit of Gerrie Kotze made on April 24, 2024 and the consent of PricewaterhouseCoopers Inc. to act as Monitor; AND UPON BEING ADVISED that the secured creditors who are likely to be affected by these charges created herein were given notice; AND pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 as amended (the "**CCAA**"), the British Columbia Supreme Court Civil rules and the inherent jurisdiction of this Honourable Court;

THIS COURT ORDERS AND DECLARES that:

**JURISDICTION**

1.      The Petitioners are companies to which the CCAA applies.

**SUBSEQUENT HEARING DATE**

2.     The hearing of the Petitioners' application for an extension of the Stay Period (as defined in paragraph 16 of this Order) and for any ancillary relief shall be held at the Courthouse at 800 Smithe Street, Vancouver, British Columbia at 9:00 a.m. on Friday, the 3rd day of May, 2024, or such other date as this Court may order.

**PLAN OF ARRANGEMENT**

3.     The Petitioners shall have the authority to file and may, subject to further order of this Court, file with this Court a plan of compromise or arrangement (hereinafter referred to as the "**Plan**").

**POSSESSION OF PROPERTY AND OPERATIONS**

4.     Subject to this Order and any further Order of this Court, the Petitioners shall remain in possession and control of their current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof (the "**Property**"), and continue to carry on their business (the "**Business**") in the ordinary course and in a manner consistent with the preservation of the Business and the Property. The Petitioners shall be authorized and empowered to continue to retain and employ the employees, consultants, agents, experts, accountants, counsel and such other persons (collectively, "**Assistants**") currently retained or employed by them, with liberty to retain such further Assistants as they deem reasonably necessary or desirable in the ordinary course of business or for carrying out the terms of this Order.

**CASH MANAGEMENT SYSTEM**

5.     the Petitioners shall be entitled to continue to utilize the central cash management system currently in place as described in the Affidavit of Gerrie Kotze sworn April 24, 2024, or replace it with another substantially similar central cash management system (the "**Cash Management System**") and that any present or future bank providing the Cash Management System shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by the Petitioners of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, shall be entitled to provide the Cash Management System without any liability in respect thereof

- 3 -

to any Person (as hereinafter defined) other than the Petitioners, pursuant to the terms of the documentation applicable to the Cash Management System, and shall be, in its capacity as provider of the Cash Management System, an unaffected creditor under the Plan with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management System.

6.    The Petitioners shall be entitled, but not required, to pay the following expenses which may have been incurred prior to the Order Date:

(a)    all outstanding wages, salaries, employee and pension benefits (including long and short term disability payments), vacation pay and expenses (but excluding severance pay) payable before or after the Order Date, in each case incurred in the ordinary course of business and consistent with the relevant compensation policies and arrangements existing at the time incurred (collectively "**Wages**"); and

(b)    the fees and disbursements of any Assistants retained or employed by the Petitioners which are related to the Petitioners' restructuring, at their standard rates and charges, including payment of the fees and disbursements of legal counsel retained by the Petitioners, whenever and wherever incurred, in respect of:

(i)    these proceedings or any other similar proceedings in other jurisdictions in which the Petitioners or any subsidiaries or affiliated companies of the Petitioners are domiciled;

(ii)    any litigation in which the Petitioners are named as a party or is otherwise involved, whether commenced before or after the Order Date; and

(iii)    any related corporate matters.;

(c)    with the consent of the Monitor, amounts owing for goods and services actually provided to any of the Petitioners prior to the date of this Order by third parties, if, in the opinion of the Petitioners, such third party is critical to the Business and ongoing operations of the Petitioners.

7.    Except as otherwise provided herein, the Petitioners shall be entitled to pay all expenses reasonably incurred by the Petitioners in carrying on the Business in the ordinary course

- 4 -

following the Order Date, and in carrying out the provisions of this Order, which expenses shall include, without limitation:

(a)      all expenses and capital expenditures reasonably incurred and which are necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors' and officers' insurance), maintenance and security services, provided that any capital expenditure exceeding $250,000 shall be approved by the Monitor;

(b)      all obligations incurred by the Petitioners after the Order Date, including without limitation, with respect to goods and services actually supplied to the Petitioners following the Order Date (including those under purchase orders outstanding at the Order Date but excluding any interest on the Petitioners' obligations incurred prior to the Order Date); and

(c)      fees and disbursements of the kind referred to in paragraph 6(b) which may be incurred after the Order Date.

8.      The Petitioners are authorized to remit, in accordance with legal requirements, or pay:

(a)      any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from Wages, including, without limitation, amounts in respect of (i) employment insurance, (ii) Canada Pension Plan, (iii) Quebec Pension Plan, and (iv) income taxes or any such claims which are to be paid pursuant to Section 6(3) of the CCAA;

(b)      all goods and services or other applicable sales taxes (collectively, "**Sales Taxes**") required to be remitted by the Petitioners in connection with the sale of goods and services by the Petitioners, but only where such Sales Taxes accrue or are collected after the Order Date, or where such Sales Taxes accrued or were collected prior to the Order Date but not required to be remitted until, on or after the Order Date; and

(c)      any amount payable to the Crown in right of Canada or of any Province thereof or any political subdivision thereof or any other taxation authority in respect of municipal property taxes, municipal business taxes or other taxes, assessments

or levies of any nature or kind which are entitled at law to be paid in priority to claims of secured creditors.

9.  Until such time as a real property lease is disclaimed  in accordance with the CCAA, the Petitioners shall pay all amounts constituting rent or payable as rent under real property leases (including, for greater certainty, common area maintenance charges, utilities and realty taxes and any other amounts payable as rent to the landlord under the lease) based on the terms of existing lease arrangements or as otherwise may be negotiated between the Petitioners and the landlord from time to time ("**Rent**"), for the period commencing from and including the Order Date, twice-monthly in equal payments on the first and fifteenth day of the month in advance (but not in arrears). On the date of the first of such payments, any Rent relating to the period commencing from and including the Order Date shall also be paid.

10. Except as specifically permitted herein, the Petitioners are hereby directed, until further Order of this Court:

    (a)  to make no payments of principal, interest thereon or otherwise on account of amounts owing by the Petitioners to any of its creditors as of the Order Date except as authorized by this Order;

    (b)  to make no payments in respect of any financing leases which create security interests;

    (c)  to grant no security interests, trust, mortgages, liens, charges or encumbrances upon or in respect of any of its Property, nor become a guarantor or surety, nor otherwise become liable in any manner with respect to any other person or entity except as authorized by this Order;

    (d)  to not grant credit except in the ordinary course of the Business only to its customers for goods and services actually supplied to those customers, provided such customers agree that there is no right of set-off in respect of amounts owing for such goods and services against any debt owing by the Petitioners to such customers as of the Order Date; and

    (e)  to not incur liabilities except in the ordinary course of Business.

**FINANCIAL ARRANGEMENTS**

11.     Notwithstanding any other provision of this Order, until and including May 3, 2024, the facilities made available to certain of the Petitioners pursuant to the Wells Fargo Credit Agreement (as defined in Affidavit #1 of Gerrie Kotze made April 24, 2024) shall continue to operate on their existing terms under the Wells Fargo Credit Agreement, including any sweep rights ("**Sweep Rights**") that may be exercised by the WF Lenders or the Wells Fargo Agent (as such terms as defined in Affidavit #1 of Gerrie Kotze made April 24, 2024). For greater certainty, the Sweep Rights and the WF Lenders' and/or Wells Fargo Agents' right to apply any funds obtained through the exercise of Sweep Rights to obligations owing to the WF Lenders prior to the date of this Order, shall not be stayed or prohibited pursuant to any term of this Order or the CCAA.

**RESTRUCTURING**

12.     Subject to such requirements as are imposed by the CCAA and such covenants as may be contained in the Definitive Documents (as hereinafter defined), the Petitioners shall have the right to:

(a)     permanently or temporarily cease, downsize or shut down all or any part of their Business or operations and commence marketing efforts in respect of any of their redundant or non-material assets [and to dispose of redundant or non-material assets not exceeding $250,000 in any one transaction or $1,000,000 in the aggregate];

(b)     terminate the employment of such of their employees or temporarily lay off such of its employees as it deems appropriate; and

(c)     pursue all avenues of refinancing for their Business or Property, in whole or part;

all of the foregoing to permit the Petitioners to proceed with an orderly restructuring of the Business (the "**Restructuring**").

13.     The Petitioners shall provide each of the relevant landlords with notice of the Petitioners' intention to remove any fixtures from any leased premises at least seven (7) days prior to the date of the intended removal. The relevant landlord shall be entitled to have a representative present in the leased premises to observe such removal and, if the landlord

- 7 -

disputes the Petitioners' entitlement to remove any such fixture under the provisions of the lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors who claim a security interest in the fixtures, such landlord and the Petitioners, or by further Order of this Court upon application by the Petitioners, the landlord or the applicable secured creditors on at least two (2) clear days' notice to the other parties. If the Petitioners disclaim the lease governing such leased premises in accordance with Section 32 of the CCAA, they shall not be required to pay Rent under such lease pending resolution of any dispute concerning such fixtures (other than Rent payable for the notice period provided for in Section 32(5) of the CCAA), and the disclaimer of the lease shall be without prejudice to the Petitioners' claim to the fixtures in dispute.

14.    If a notice of disclaimer is delivered pursuant to Section 32 of the CCAA, then: (a) during the period prior to the effective time of the disclaimer, the landlord may show the affected leased premises to prospective tenants during normal business hours on giving the Petitioners and the Monitor 24 hours' prior written notice; and (b) at the effective time of the disclaimer, the landlord shall be entitled to take possession of any such leased premises without waiver of or prejudice to any claims the landlord may have against the Petitioners, or any other rights the landlord might have, in respect of such lease or leased premises and the landlord shall be entitled to notify the Petitioners of the basis on which it is taking possession and gain possession of and re-lease such leased premises to any third party or parties on such terms as the landlord considers advisable, provided that nothing herein shall relieve the landlord of its obligation to mitigate any damages claimed in connection therewith.

15.    Pursuant to Section 7(3)(c) of the *Personal Information Protection and Electronics Documents Act*, S.C. 2000, c. 5 and Section 18(1)(o) of the *Personal Information Protection Act*, S.B.C. 2003, c. 63, and any regulations promulgated under authority of either Act, as applicable (the "**Relevant Enactment**"), the Petitioners, in the course of these proceedings, is permitted to, and hereby shall, disclose personal information of identifiable individuals in its possession or control to stakeholders, its advisors, prospective investors, financiers, buyers or strategic partners (collectively, "**Third Parties**"), but only to the extent desirable or required to negotiate and complete the Restructuring or to prepare and implement the Plan or transactions for that purpose; provided that the Third Parties to whom such personal information is disclosed enter into confidentiality agreements with the Petitioners binding them in the same manner and to

the same extent with respect to the collection, use and disclosure of that information as if they were an organization as defined under the Relevant Enactment, and limiting the use of such information to the extent desirable or required to negotiate or complete the Restructuring or to prepare and implement the Plan or transactions for that purpose, and attorning to the jurisdiction of this Court for the purposes of that agreement. Upon the completion of the use of personal information for the limited purposes set out herein, the Third Parties shall return the personal information to the Petitioners or destroy it. If the Third Parties acquire personal information as part of the Restructuring or the preparation and implementation of the Plan or transactions in furtherance thereof, such Third Parties may, subject to this paragraph and any Relevant Enactment, continue to use the personal information in a manner which is in all respects identical to the prior use thereof by the Petitioners.

**STAY OF PROCEEDINGS, RIGHTS AND REMEDIES**

16.     Until and including May 3, 2024, or such later date as this Court may order (the "**Stay Period**"), no action, suit or proceeding in any court or tribunal (each, a "**Proceeding**") against or in respect of the Petitioners or the Monitor, or affecting the Business or the Property, shall be commenced or continued except with the written consent of the Petitioners and the Monitor or with leave of this Court, and any and all Proceedings currently under way against or in respect of the Petitioners or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.

17.     During the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of the Petitioners or the Monitor, or affecting the Business or the Property, are hereby stayed and suspended except with the written consent of the Petitioners and the Monitor or leave of this Court.

18.     Nothing in this Order, including paragraphs 16 and 17, shall: (i) empower the Petitioners to carry on any business which the Petitioners are not lawfully entitled to carry on; (ii) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA; (iii) prevent the filing of any registration to preserve or perfect a mortgage, charge or security interest (subject to the provisions of Section 39 of the CCAA relating to the priority of statutory Crown securities); or (iv) prevent the registration

or filing of a lien or claim for lien or the commencement of a Proceeding to protect lien or other rights that might otherwise be barred or extinguished by the effluxion of time, provided that no further step shall be taken in respect of such lien, claim for lien or Proceeding except for service of the initiating documentation on the Petitioners.

**NO INTERFERENCE WITH RIGHTS**

19.    During the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Petitioners, except with the written consent of the Petitioners and the Monitor or leave of this Court.

**CONTINUATION OF SERVICES**

20.    During the Stay Period, all Persons having oral or written agreements with the Petitioners or mandates under an enactment for the supply of goods and/or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation, services, utility or other services to the Business or the Petitioners, are hereby restrained until further Order of this Court from discontinuing, altering, interfering with, or terminating the supply of such goods or services as may be required by the Petitioners, and that the Petitioners shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the Order Date are paid by the Petitioners in accordance with normal payment practices of the Petitioners or such other practices as may be agreed upon by the supplier or service provider and the Petitioners and the Monitor, or as may be ordered by this Court.

**NON-DEROGATION OF RIGHTS**

21.    Notwithstanding any provision in this Order, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided on or after the Order Date, nor shall any Person be under any obligation to advance or re-advance any monies or otherwise extend any credit to the Petitioners on or after the Order Date. Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA.

**PROCEEDINGS AGAINST DIRECTORS AND OFFICERS**

22.     During the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against the directors or officers of the Petitioners with respect to any claim against the directors or officers that arose before the date hereof and that relates to any obligations of the Petitioners whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such obligations, until a compromise or arrangement in respect of the Petitioners, if one is filed, is sanctioned by this Court or is refused by the creditors of the Petitioners or this Court. Nothing in this Order, including in this paragraph, shall prevent the commencement of a Proceeding to preserve any claim against a director or officer of the Petitioners that might otherwise be barred or extinguished by the effluxion of time, provided that no further step shall be taken in respect of such Proceeding except for service of the initiating documentation on the applicable director or officer.

**DIRECTORS AND OFFICERS INDEMNIFICATION AND CHARGE**

23.     The Petitioners shall indemnify their directors and officers against obligations and liabilities that they may incur as directors or officers of the Petitioners after the commencement of the within proceedings, except to the extent that, with respect to any director or officer, the obligation or liability was incurred as a result of the director's or officer's gross negligence or wilful misconduct.

24.     The directors and officers of the Petitioners shall be entitled to the benefit of and are hereby granted a charge (the "**Directors' Charge**") on the Property, which charge shall not exceed an aggregate amount of $250,000, as security for the indemnity provided in paragraph 23 of this Order. The Directors' Charge shall have the priority set out in paragraphs 36 and 38 herein.

25.     Notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and (b) the Petitioners' directors and officers shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph 23 of this Order.

**APPOINTMENT OF MONITOR**

26.     PricewaterhouseCoopers Inc. is hereby appointed pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the business and financial affairs of the Petitioners with the powers and obligations set out in the CCAA or set forth herein, and that the Petitioners and their shareholders, officers, directors, and Assistants shall advise the Monitor of all material steps taken by the Petitioners pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations and provide the Monitor with the assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.

27.     The Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

     (a)     monitor the Petitioners' receipts and disbursements;

     (b)     report to this Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, and such other matters as may be relevant to the proceedings herein;

     (c)     have full and complete access to the Property, including the premises, books, records, data, including data in electronic form, and other financial documents of the Petitioners, to the extent that is necessary to adequately assess the Petitioners' business and financial affairs or to perform its duties arising under this Order;

     (d)     be at liberty to engage independent legal counsel or such other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order; and

     (e)     perform such other duties as are required by this Order or by this Court from time to time.

28.     The Monitor shall not take possession of the Property and shall take no part whatsoever in the management or supervision of the management of the Business and shall not, by fulfilling its obligations hereunder, or by inadvertence in relation to the due exercise of powers or performance of duties under this Order, be deemed to have taken or maintained possession or control of the Business or Property, or any part thereof, and nothing in this

Order shall be construed as resulting in the Monitor being an employer or a successor employer, within the meaning of any statute, regulation or rule of law or equity, for any purpose whatsoever.

29.    Nothing herein contained shall require or allow the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, "**Possession**") of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the *Canadian Environmental Protection Act*, the *Fisheries Act*, the *British Columbia Environmental Management Act*, the *British Columbia Fish Protection Act* and regulations thereunder (the "**Environmental Legislation**"), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation. For greater certainty, the Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.

30.    The Monitor shall provide any creditor of the Petitioners with information provided by the Petitioners in response to reasonable requests for information made in writing by such creditor addressed to the Monitor. The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph.  In the case of information that the Monitor has been advised by the Petitioners is confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Petitioners may agree.

31.    In addition to the rights and protections afforded the Monitor under the CCAA or as an officer of this Court, the Monitor shall incur no liability or obligation as a result of its appointment or the carrying out of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part. Nothing in this Order shall derogate from the rights and protections afforded the Monitor by the CCAA or any applicable legislation.

## ADMINISTRATION CHARGE

32.     The Monitor, counsel to the Monitor, if any, and counsel to the Petitioners shall be paid their reasonable fees and disbursements, in each case at their standard rates and charges, by the Petitioners as part of the cost of these proceedings. The Petitioners are hereby authorized and directed to pay the accounts of the Monitor, counsel to the Monitor and counsel to the Petitioners on a periodic basis and, in addition, the Petitioners are hereby authorized to pay to the Monitor, counsel to the Monitor, and counsel to the Petitioners, retainers in the amounts of $50,000 respectively to be held by them as security for payment of their respective fees and disbursements outstanding from time to time.

33.     The Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the British Columbia Supreme Court who may determine the manner in which such accounts are to be passed, including by hearing the matter on a summary basis or referring the matter to a Registrar of this Court.

34.     The Monitor, counsel to the Monitor, if any, and counsel to the Petitioners shall be entitled to the benefit of and are hereby granted a charge (the "**Administration Charge**") on the Property, which charge shall not exceed an aggregate amount of $350,000, as security for their respective fees and disbursements incurred at the standard rates and charges of the Monitor and such counsel, both before and after the making of this Order which are related to the Petitioners' restructuring. The Administration Charge shall have the priority set out in paragraphs 36 and 38 hereof.

## FINANCIAL ADVISOR

35.     Ernst & Young Inc., in its capacity as financial advisor to Wells Fargo Capital Finance Corporation Canada, as Administrative Agent (the "**Financial Advisor**") shall be entitled to the benefit of and is hereby granted a charge on the Property, which charge shall not exceed an amount of $50,000 (the "**FA Charge**") as security for the fees and disbursements and other amounts payable to the Financial Advisor, both before and after the making of this Order in respect of these proceedings. The FA Charge shall have the priority set out in paragraphs 36 and 38 herein.

## VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER

36.     The priorities of the Administration Charge, the Directors' Charge, and the FA Charge, as among them, shall be as follows:

(a)     First – Administration Charge;

(b)     Second -  Directors' Charge; and

(c)     Third -FA Charge

37.     Any security documentation evidencing, or the filing, registration or perfection of, the Administration Charge, and the Directors' Charge (collectively, the "**Charges**") shall not be required, and that the Charges shall be effective as against the Property and shall be valid and enforceable for all purposes, including as against any right, title or interest filed, registered or perfected subsequent to the Charges coming into existence, notwithstanding any failure to file, register or perfect any such Charges.

38.     Each of the Charges shall constitute a mortgage, security interest, assignment by way of security and charge on the Property and such Charges shall rank in priority to all other security interests, trusts, liens, mortgages, charges and encumbrances and claims of secured creditors, statutory or otherwise (collectively, "**Encumbrances**"), in favour of any Person, save and except those claims contemplated by section 11.8(8) of the CCAA.

39.     Except as otherwise expressly provided herein, or as may be approved by this Court, the Petitioners shall not grant or suffer to exist any Encumbrances over any Property that rank in priority to, or *pari passu* with the Charges, unless the Petitioners obtains the prior written consent of the Monitor, and the beneficiaries of the Administration Charge and the Director's Charge.

40.     The Administration Charge and the Director's Charge shall not be rendered invalid or unenforceable and the rights and remedies of the chargees entitled to the benefit of the Charges (collectively, the "**Chargees**") shall not otherwise be limited or impaired in any way by (a) the pendency of these proceedings and the declarations of insolvency made herein; (b) any application(s) for bankruptcy order(s) issued pursuant to the BIA, or any bankruptcy order made pursuant to such applications; (c) the filing of any assignments for the general benefit of creditors made pursuant to the BIA; (d) the provisions of any federal

or provincial statutes; or (e) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan documents, lease, mortgage, security agreement, debenture, sublease, offer to lease or other agreement (collectively, an "**Agreement**") which binds the Petitioners and notwithstanding any provision to the contrary in any Agreement:

(a)     neither the creation of the Charges nor the execution, delivery, perfection, registration or performance of the Commitment Letter or the Definitive Documents shall create or be deemed to constitute a breach by the Petitioners of any Agreement to which it is a party;

(b)     none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from the Petitioners entering into the Commitment Letter, the creation of the Charges, or the execution, delivery or performance of the Definitive Documents; and

(c)     the payments made by the Petitioners pursuant to this Order, the Commitment Letter or the Definitive Documents, and the granting of the Charges, do not and will not constitute preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law.

41.     THIS COURT ORDERS that any Charge created by this Order over leases of real property in Canada shall only be a Charge in the Petitioners' interest in such real property leases.

**SERVICE AND NOTICE**

42.     The Monitor shall (i) without delay, publish in the Vancouver Sun a notice containing the information prescribed under the CCAA, (ii) within five days after the Order Date, (A) make this Order publicly available in the manner prescribed under the CCAA, (B) send, in the prescribed manner, a notice to every known creditor who has a claim against the Petitioners of more than $1000, and (C) prepare a list showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder.

43.     The Petitioners and the Monitor are at liberty to serve this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery or electronic transmission to the Petitioners' creditors or other interested parties at their respective addresses as last shown on the records of the Petitioners and that any such service or notice by courier, personal delivery or electronic transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

44.     Any Person that wishes to be served with any application and other materials in these proceedings must deliver to the Monitor by way of ordinary mail, courier, personal delivery or electronic transmission a request to be added to a service list (the "**Service List**") to be maintained by the Monitor. The Monitor shall post and maintain an up to date form of the Service List on its website at: www.pwc.com/ca/tealjones.

45.     Any party to these proceedings may serve any court materials in these proceedings by emailing a PDF or other electronic copy of such materials to counsels' email addresses as recorded on the Service List from time to time, and the Monitor shall post a copy of all prescribed materials on its website at: www.pwc.com/ca/tealjones.

46.     Notwithstanding paragraphs 43 and 45 of this Order, service of the Petition, the Notice of Hearing of Petition, any affidavits filed in support of the Petition and this Order shall be made on the Federal and British Columbia Crowns in accordance with the *Crown Liability and Proceedings Act*, R.S.C. 1985, c. C-50, and regulations thereto, in respect of the Federal Crown, and the *Crown Proceeding Act*, R.S.B.C. 1996, c. 89, in respect of the British Columbia Crown.

**GENERAL**

47.     The Petitioners or the Monitor may from time to time apply to this Court for directions in the discharge of its powers and duties hereunder.

48.     Nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Petitioners, the Business or the Property.

49.     THIS COURT REQUESTS the aid and recognition of other Canadian and foreign Courts, tribunal, regulatory or administrative bodies, including any Court or administrative tribunal of any federal or State Court or administrative body in the United States of America, to act in aid of and to be complementary to this Court in carrying out the terms of this Order where required. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Petitioners and to Teal Jones Holdings Ltd., as may be necessary or desirable to give effect to this Order, to grant representative status to Teal Jones Holdings Ltd. in any foreign proceeding, or to assist the Petitioners and Teal Jones Holdings Ltd. and their respective agents in carrying out the terms of this Order.

50.     Each of the Petitioners shall be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order and the Petitioners are authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada, including acting as a foreign representative to apply to the United States Bankruptcy Court for relief pursuant to Chapter 15 of the *United States Bankruptcy Code*, 11 U.S.C. §§ 101-1532, as amended.

51.     The Petitioners may (subject to the provisions of the CCAA and the BIA) at any time file a voluntary assignment in bankruptcy or a proposal pursuant to the commercial reorganization provisions of the BIA if and when the Petitioners determines that such a filing is appropriate.

52.     The Petitioners are hereby at liberty to apply for such further interim or interlocutory relief as it deems advisable within the time limited for Persons to file and serve Responses to the Petition.

53.     Leave is hereby granted to hear any application in these proceedings on two (2) clear days' notice after delivery to all parties on the Service List of such Notice of Application and all affidavits in support, subject to the Court in its discretion further abridging or extending the time for service.

54.     Any interested party (including the Petitioners and the Monitor) may apply to this Court to vary or amend this Order on not less than seven (7) days' notice to all parties on the

Service List and to any other party or parties likely to be affected by the order sought or upon such other notice, if any, as this Court may order.

55.     Endorsement of this Order by counsel appearing on this application other than counsel for the Petitioners are hereby dispensed with.

56.     This Order and all of its provisions are effective as of 12:01 a.m. local Vancouver time on the Order Date.

THE FOLLOWING PARTIES APPROVE THE FORM OF THIS ORDER AND CONSENT TO EACH OF THE ORDERS, IF ANY, THAT ARE INDICATED ABOVE AS BEING BY CONSENT:

Signature of ☒ lawyer for the Petitioners
DLA Piper (Canada) LLP (Colin D. Brousson)

BY THE COURT

REGISTRAR

Certified a true copy according to
the records of the Supreme Court
at Vancouver, B.C.
DATED:    APR 2 5 2024

Authorized Signing Officer

CHRIS GILMOUR
Deputy District Registrar

**SCHEDULE "A"**

**List of Petitioners**

1.     Teal Jones Holdings Ltd.

2.     Teal Cedar Products Ltd.

3.     Columbia River Shake & Shingle

4.     Teal-Jones Aviation GP Ltd.

5.      Teal-Jones Group

6.     Teal-Jones Aviation Limited Partnership

7.     Teal Jones Holdings USA Inc.

8.     Teal Jones Lumber Services Inc.

9.     Teal Jones Dry Kilns, LLC

10.    Teal Jones Lumber Sales, LLC

11.    Pine Products, LLC

12.    Potomac Supply, LLC

13.    Teal Jones Lumber, LLC

14.    Teal Jones Louisiana Holdings, LLC

15.    Greentree Lumber Company, LLC

- 20 -

**SCHEDULE "B"**

**LIST OF COUNSEL**

| Name of Counsel | Party Representing |
|---|---|
| John Sandrelli and Emma Newbery | PriceWaterhouseCoopers, Proposed Monitor |
| Peter Bychawski and Claire Hildebrand | Royal Bank of Canada |
| David Gruber and Mike Shakra | Wells Fargo Capital Finance Corp. and Export Development Canada |
| Kendall Andersen | BDC |
|  |  |
|  |  |
|  |  |

## Exhibit B

### Resolutions

**UNANIMOUS WRITTEN CONSENT OF THE BOARD OF THE DIRECTORS
IN LIEU OF MEETING
OF
TEAL JONES HOLDINGS USA INC.**

**April 25, 2024**

We, the undersigned, being all the directors (the "**Board**") of Teal Jones Holdings USA Inc., a Delaware corporation (the "**Company**"), hereby adopt the following resolutions pursuant to the Delaware General Corporation Law and declare them to be in full force and effect as if they had been adopted at a duly convened meeting of the Board**:**

**WHEREAS:**

A.      Management of the Company is hereby vested in the Board pursuant to Article III section 3.01 of the Bylaws of Teal Jones Holdings USA Inc., dated as of November 17, 2014, and section 141(a) of the General Corporation Laws of the State of Delaware.

B.      The Board has considered presentations by the management and the financial and legal advisors of the Company regarding the liabilities and liquidity of the Company and its direct and indirect subsidiaries set forth on **Schedule A** hereto (collectively, the "**Subsidiaries**"), the strategic alternatives available to the Company and the Subsidiaries, and the effect of the foregoing on the business of the Company and the Subsidiaries.

C.      The Board has had the opportunity to consult with the management and the financial and legal advisors of the Company and fully consider each of the strategic alternatives available to the Company and the Subsidiaries.

D.      The Board has determined it is in the best interests of the Company and the Subsidiaries, their respective shareholders and members, creditors and other parties in interest to seek protection pursuant to the *Companies' Creditors Arrangement Act* (the "**CCAA**") and recognition of the CCAA proceedings under Chapter 15 of title 11 of the U.S. Bankruptcy Code to, *inter alia,* implement the Transaction (the "**Proceedings**").

**RESOLVED THAT:**

1.      The Company and the Subsidiaries are authorized to file an application with the Supreme Court of British Columbia for protection pursuant to the CCAA (the "**Application**").

2.      The Company and the Subsidiaries are authorized to seek recognition of applicable orders in the CCAA proceedings in ancillary insolvency proceedings under Chapter 15 of Title 11 of the U.S. Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

3.      The Company and the Subsidiaries are authorized to engage PricewaterhouseCoopers Inc. to assist in the Application and to act as monitor in such Proceedings.

4.      The Company and the Subsidiaries are authorized, empowered and directed to act as foreign representative in connection with the insolvency proceedings commenced under Chapter 15 of Title 11 of the U.S. Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

5.      The Company and the Subsidiaries are authorized and directed to engage and employ the law firm of DLA Piper (Canada) LLP and DLA Piper LLP (US) as restructuring counsel to represent and assist the Company and the Subsidiaries in carrying out their duties under the applicable insolvency laws of Canada and the United States of America, and to take any and all actions to advance the rights and obligations of Company and the Subsidiaries under the applicable insolvency laws.

6.      Any officer or director of the Company and the Subsidiaries be and is hereby authorized to execute all documents and do all other things as may be deemed necessary or desirable in connection with giving effect to these resolutions.

7.      Any acts taken prior to the effective date of these resolutions by any director or officer in connection with the matters covered in these resolutions is hereby approved, ratified and confirmed.

8.      These resolutions may be signed in counterparts and may be delivered electronically, and such counterparts together shall constitute one and the same instrument and shall be deemed to be an original executed on the date set forth above.

[*signature page follows*]

**IN WITNESS WHEREOF**, the undersigned, being the directors of the Company, hereby consent to, approve and adopt the foregoing resolutions as of the date first written above.

DocuSigned by:

FDBABFFA5FE1497
**HANIF A. KARMALLY**

DocuSigned by:

89E87F73CF724BC
**KEN KAISER**

DocuSigned by:

Michael B Grenier
06C1A8AEEC214E3
**MICHAEL GRENIER**

# SCHEDULE A

## SUBSIDIARIES

1. Potomac Supply, LLC

2. Teal Jones Lumber Services Inc.

3. Teal Jones Dry Kilns, LLC

4. Teal Jones Lumber Sales, LLC

5. Pine Products, LLC

6. Teal Jones Lumber, LLC

7. Greentree Lumber Company, LLC

8. Teal Jones Louisiana Holdings LLC

**Exhibit C**

**Rule 1007(a)(4) List**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 15 |
| TEAL JONES HOLDINGS LTD., *et al.*, | Case No. 24-[_____] (•) |
| Debtors in a foreign proceeding.[1] | (Joint Administration Requested) |

### LIST PURSUANT TO RULE 1007(a)(4) OF THE
### FEDERAL RULES OF BANKRUPTCY PROCEDURE

Teal Jones Holdings Ltd., in its capacity as the duly-appointed foreign representative (the "**Foreign Representative**") for the above-captioned debtors (collectively, the "**Debtors**"), which are the subject of the proceedings (the "**Canadian Proceedings**") currently pending before the Supreme Court of British Columbia (the "**Canadian Court**"), initiated pursuant to the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 (as amended, the "**CCAA**"), respectfully represents:

## I.     Administrator in foreign proceedings concerning the Debtors

Teal Jones Holdings Ltd. is the Canadian Court-appointed and duly authorized Foreign Representative in the Canadian Proceedings.  PricewaterhouseCoopers Inc. is the Canadian Court-appointed monitor (the "**Monitor**") in the Canadian Proceedings.  The Foreign Representative believes that, other than the Canadian Proceedings, there are no foreign proceedings pending with respect to the Debtors.

---

[1]       The Debtors in these chapter 15 proceedings, together with the last four digits of their business identification numbers are: Teal Jones Holdings Ltd. (6191); Teal Cedar Products Ltd. (3407); Teal Jones Holdings USA Inc. (3458); Teal Jones Lumber Services Inc. (0074); Pine Products, LLC (9564); Teal Jones Lumber, LLC (8387); Potomac Supply, LLC (6850); Greentree Lumber Company, LLC (2555); Teal Jones Dry Kilns, LLC (0595); Teal Jones Lumber Sales LLC (4959); Teal-Jones Aviation GP Ltd. (3585); Teal-Jones Group (9552); Columbia River Shake & Shingle (8667); Teal-Jones Aviation Limited Partnership (8105); and Teal Jones Louisiana Holdings LLC (0637). The location of the Debtors' headquarters is 17897 Trigg Road, Surrey, BC, Canada, V4N4M8, and the Debtors' mailing address is 1133 Melville Street, Suite 2700, Vancouver, BC V6E 4E5.

The Foreign Representative's mailing address is:

Teal Jones Holdings Ltd.
c/o DLA Piper LLP (Canada)
1133 Melville St.,
Suite 2700,
Vancouver, BC V6E 4E5.


The Monitor's address is:

PricewaterhouseCoopers Inc. LIT
250 Howe Street,
Suite 1400,
Vancouver, BC V6C 3S7.

## II.     All parties to litigation pending in the United States in which a Debtor is a party at the time of filing of the chapter 15 petitions

The Foreign Representative submits that, to the best of its knowledge, there is no pending litigation concerning the Debtors in the United States as of the time of filing the chapter 15 petitions.

## III.     Entities against whom provisional relief is sought pursuant to 11 U.S.C. § 1519

The Debtors are not currently seeking provisional relief pursuant to 11 U.S.C. § 1519.

## IV.     Corporate ownership statement pursuant to Rules 1007(a) and 7007 of the Federal Rules of Bankruptcy Procedure

Pursuant to Rules 1007(a) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the Foreign Representative submits the following list of entities that hold ownership interests in the Debtors:


### A.     Teal Jones Holdings Ltd.

Tom D. Jones Family Trust, Tom D. Jones, Dick G. Jones, and Dick G. Jones Family Trust each own 25% of the ownership interests of Teal Jones Holdings Ltd.

B. <u>Teal Cedar Products Ltd.</u>

Teal Jones Holdings Ltd. owns 100% of the ownership interests in Teal Cedar Products Ltd.

C. <u>Columbia River Shake & Shingle</u>

Teal Cedar Products Ltd. owns 100% of the ownership interests of Columbia River Shake & Shingle.

D. <u>Teal-Jones Aviation GP Ltd.</u>

Teal Jones Holdings Ltd. owns 100% of the ownership interests of Teal-Jones Aviation GP Ltd.

E. <u>Teal-Jones Group</u>

Teal Cedar Products Ltd. owns 98% of the ownership interests of Teal-Jones Group, and Columbia River Shake & Shingle owns 2% of the ownership interests of Teal-Jones Group.

F. <u>Teal-Jones Aviation Limited Partnership</u>

Teal Cedar Products Ltd. owns 98% of the ownership interests of Teal-Jones Aviation Limited Partnership, Columbia River Shake & Shingle owns 1.99% of the ownership interests of Teal-Jones Aviation Limited Partnership, and Teal-Jones Aviation GP Ltd. owns 0.01% of the ownership interests of Teal-Jones Aviation Limited Partnership.

G. <u>Teal Jones Holdings USA Inc.</u>

Teal Cedar Products Ltd. owns 100% of the ownership interests of Teal Jones Holdings USA Inc.

H. <u>Teal Jones Lumber Services Inc.</u>

Teal Jones Holdings USA Inc. owns 100% of the ownership interests of Teal Jones Lumber Services Inc.

I.      Teal Jones Dry Kilns, LLC

Teal Jones Lumber Services Inc. owns 100% of the ownership interests of Teal Jones Dry Kilns, LLC.

J.      Teal Jones Lumber Sales, LLC

Teal Jones Lumber Services Inc. owns 100% of the ownership interests of Teal Jones Lumber Sales, LLC.

K.      Pine Products, LLC

Teal Jones Lumber Services Inc. owns 100% of the ownership interests of Pine Products, LLC.

L.      Potomac Supply, LLC

Teal Jones Lumber Services Inc. owns 100% of the ownership interests of Potomac Supply, LLC.

M.      Teal Jones Lumber, LLC

Teal Jones Lumber Services Inc. owns 100% of the ownership interests of Teal Jones Lumber, LLC.

N.      Teal Jones Louisiana Holdings, LLC

Teal Jones Lumber Services Inc. owns 100% of the ownership interests of Teal Jones Louisiana Holdings, LLC.

O.      Greentree Lumber Company, LLC

Teal Jones Lumber Services Inc. owns 75% of the ownership interests of Greentree Lumber Company, LLC, and non-debtors Gary Stewart, Tonya Stewart, Caroline Stewart, and Clint Stewart own 8.75%, 8.75%, 3.75%, and 3.75%, respectively, of the ownership interests of Greentree Lumber Company, LLC.

## DECLARATION UNDER PENALTY OF PERJURY

I, Gerrie Kotze, am the Vice President and Chief Financial Officer and an authorized signatory of the Foreign Representative in these chapter 15 cases.  In such capacity, I am familiar with the operations and financial affairs of the Debtors.  I declare under penalty of perjury under the laws of the United States of America that any information provided in the foregoing "List Pursuant to Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure" is true and correct to the best of my knowledge, information and belief, with reliance on appropriate corporate officers.

 Dated: April 26, 2024

 _/s/ Gerrie Kotze_____
 Gerrie Kotze
 Vice President and Chief Financial Officer of
 Teal Jones Holdings Ltd.

**<u>Exhibit D</u>**

**Form 202**

<div style="border:1px solid black; padding:4px;">
<div style="background:black; color:white; padding:2px;">Fill in this information to identify the case and this filing:</div>

Debtor Name   <u>Teal Jones Lumber, LLC</u>

United States Bankruptcy Court for the:    <u>District of Delaware</u>
<div style="text-align:center;">(State)</div>

Case number (*If known*):<u>           </u>
</div>

## Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors 12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐     *Schedule A/B: Assets–Real and Personal Property (Official Form 206A/B)*

☐     *Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)*

☐     *Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)*

☐     *Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)*

☐     *Schedule H: Codebtors (Official Form 206H)*

☐     *Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)*

☐     *Amended Schedule* _____

☐     *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders (Official Form 204)*

☒     *Other document that requires a declaration*  Rule <u>1007(a)(4) Statement and Corporate Ownership Statement</u>

I declare under penalty of perjury that the foregoing is true and correct.

Executed on <u> 04/26/2024     </u>
       MM / DD / YYYY

✗  <u>/s/ Gerrie Kotze</u>
Signature of individual signing on behalf of debtor

<u>Gerrie Kotze</u>
Printed name

<u>Vice President & Chief Financial Officer</u>
Position or relationship to debtor